MARALYN M. ENGLISH (8468)
NATHAN R. SKEEN (12662)
SNOW, CHRISTENSEN & MARTINEAU
10 Exchange Place, Eleventh Floor
Post Office Box 45000
Salt Lake City, Utah  84145
Telephone:  (801) 521-9000
mme@scmlaw.com
nrs@scmlaw.com

*Attorneys for Plaintiff University of Utah*

IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNIVERSITY OF UTAH, a body politic and corporate of the State of Utah, | |
| Plaintiff, | **COMPLAINT AND JURY DEMAND** |
| vs. | |
| CBS OUTDOOR, INC. d/b/a CBS COLLEGIATE SPORTS PROPERTIES, INC., a Delaware corporation; OUTFRONT MEDIA SPORTS, INC., a Delaware corporation; and OUTFRONT MEDIA, INC., a Maryland corporation, | Case No. 2:18-cv-00180 <br><br> Magistrate Judge Brooke C. Wells |
| Defendants. | |

University of Utah ("the University"), by and through counsel, hereby complains as follows:

## PARTIES AND JURISDICTION

1. The University is a not-for-profit organization existing under the laws of the State of Utah, with its principal place of business located in Salt Lake City, Utah. Under Utah law, the University is a body politic and corporate of the State of Utah.

2. On information and belief, CBS Outdoor, Inc. d/b/a CBS Collegiate Sports Properties, Inc. is a Delaware corporation, with its principal place of business located in New York City, New York.

3. On information and belief, in 2014, CBS Outdoor, Inc. d/b/a CBS Collegiate Sports Properties, Inc. changed its name to Outfront Media Sports, Inc., a Delaware corporation, with its principal place of business in Charlotte, North Carolina or New York City, New York.

4. On information and belief, Outfront Media Sports, Inc. is a division or subsidiary of Outfront Media, Inc., a Maryland corporation, with its principal place of business in New York City, New York.

5. CBS Outdoor, Inc. d/b/a CBS Collegiate Sports, Properties, Inc., Outfront Media Sports, Inc., and Outfront Media, Inc. are collectively referred to herein as "CBSCSP."

6. The Court has jurisdiction pursuant to 28 U.S.C. § 1332(a), because there is complete diversity in citizenship and the amount in controversy exceeds $75,000.00, exclusive interest and costs.

7. Venue is proper in the United States District Court for the District of Utah pursuant to 28 U.S.C. § 1391(b), because the acts or omissions giving rise to the claim occurred in the State of Utah.

## BACKGROUND

8. The University realleges and incorporates Paragraphs 1 through 7 by this reference.

9. The University maintains and operates several university varsity sports programs that participate and compete in intercollegiate sports.

10. The University owns various intellectual property rights, multi-media rights, and sponsorship rights pertaining to its university varsity sports programs.

11. CBSCSP is a media company that provides merchandising, promotion, and marketing services for universities and their athletic programs, and disseminates radio and television broadcasts of collegiate athletic events.

12. In May 2007, the University entered into a Multi-Media Rights Agreement ("the Agreement") with CBSCSP.

13. The term of the Agreement was to begin on or about May 7, 2007 and expire on June 30, 2017, unless the Agreement was terminated at an earlier date.

14. Pursuant to the Agreement, the University granted to CBSCSP certain sponsorship, broadcast/distribution, and event marketing rights and privileges associated with the University's athletic programs during the term of the Agreement.

15. These rights and privileges included the authority to enter into broadcasting, sponsorship, and/or advertising agreements with third parties. Any such agreements CBSCSP entered into were required to expire no later than concurrently with the expiration or earlier termination of the Agreement with the University, unless agreed to by the University in writing.

16. In exchange, CBSCSP agreed to pay the University an annual rights fee for each year of the Agreement, as well as a percentage of the gross revenue collected by CBSCSP in administering the University's sponsorship, broadcast/distribution, and event marketing rights and privileges.

17. CBSCSP also agreed to provide additional incentives to the University under the Agreement.

18. CBSCSP agreed to pay the annual rights fee to the University in quarterly payments during each year of the Agreement, and to pay the percentage of gross revenue within sixty (60) calendar days of the last day (June 30th) of each Agreement year.

19. Upon the expiration or earlier termination of the Agreement, all of the rights granted to CBSCSP were extinguished and immediately reverted back to and vested with the University.

20. Upon the expiration or earlier termination of the Agreement, CBSCSP was required to deliver and assign to the University all broadcasting, sponsorship, and/or advertising agreements it had entered into with third parties as authorized by the Agreement.

21. Upon termination of the Agreement, the University was required to pay CBSCSP an amount equal to 15% of the total value of any authorized broadcasting, sponsorship, and/or advertising agreements CBSCSP entered into with third parties that extended beyond the expiration of the Agreement, but only if (1) CBSCSP terminated the Agreement following a default by the University, or (2) the University terminated the Agreement other than due to a default by CBSCSP.

22. The University was not required to pay CBSCSP an amount equal to 15% of the total value of any authorized broadcasting, sponsorship, and/or advertising agreements CBSCSP

entered into with third parties that extended beyond the expiration of the Agreement if the Agreement expired pursuant to its terms on June 30, 2017.

23. In January 2015, Andrew Waters, a general manager of CBSCSP, requested permission from the University to enter into sponsorship contracts with third parties under the Agreement that extended beyond the expiration (June 30, 2017) of the Agreement.

24. In making this request, Mr. Waters explained that the purpose in entering sponsorship contracts that extended beyond the expiration of the Agreement was "just so that we can operate business as usual for the next couple of years while our negotiation with Athletics continues on. This is simply a day-to-day business need."

25. The University ultimately agreed to allow CBSCSP to enter into nineteen (19) sponsorship contracts that extended beyond June 30, 2017.

26. CBSCSP received compensation, benefits, and/or payments, directly or indirectly, prior to June 30, 2017 from the nineteen (19) sponsorship contracts that extended beyond June 30, 2017.

27. The Agreement expired pursuant to its terms on June 30, 2017.

28. The University did not terminate the Agreement.

29. When the Agreement expired pursuant to its terms on June 30, 2017, CBSCSP owed in excess of $1,500,000 to the University as the percentage of gross revenue for the Agreement year ending on June 30, 2017.

30. CBSCSP was required to pay the percentage of gross revenue for the Agreement year ending on June 30, 2017 to the University within sixty (60) calendar days of that date.

31. CBSCSP failed to submit any payment to the University for the percentage of gross revenue for the Agreement year ending on June 30, 2017 within sixty (60) calendar days of that date.

32. On or about August 14, 2017, Doug Paschal, Vice President/General Manager of CBSCSP notified the University that CBSCSP had assigned to the University each of the nineteen (19) sponsorship contracts that extended beyond June 30, 2017, the date the Agreement expired.

33. Even though the Agreement expired pursuant to its terms on June 30, 2017, and was not terminated by the University, Mr. Paschal also demanded from the University immediate payment in an amount equal to 15% of the total value of the nineteen (19) sponsorship contracts that extended beyond June 30, 2017.

34. The immediate payment Mr. Paschal demanded from the University included 15% of unpaid amounts that were not yet due and owing under the nineteen (19) sponsorship contracts, and that would not become due and owing under the nineteen (19) sponsorship contracts until one to five years later.

35. In total, Mr. Paschal demanded payment of $806,689.28 from the University to CBSCSP.

36. The University informed Mr. Paschal that it did not owe any amount under the Agreement to CBSCSP for the nineteen (19) sponsorship contracts that extended beyond June 30, 2017 because the Agreement expired pursuant to its terms on June 30, 2017, and was not terminated by the University.

37. The University also reminded Mr. Paschal that in excess of $1,500,000 was past due and owing to the University as the percentage of gross revenue for the Agreement year ending on June 30, 2017.

38. In response, CBSCSP refused to pay the full amount of the percentage of gross revenue for the Agreement year ending on June 30, 2017 that was past due and owing to the University.

39. Instead, CBSCSP stated that it would withhold $806,689.28 from its payment to the University for the percentage of gross revenue for the Agreement year ending on June 30, 2017.

40. Additionally, CBSCSP stated that the percentage of gross revenue for the Agreement year ending June 30, 2017 was approximately $50,000 to $80,000 less than what was actually past due and owing to the University.

41. More than sixty (60) days after June 30, 2017, CBSCSP submitted a partial payment of the percentage of gross revenue for the Agreement year ending on June 30, 2017 that was due and owing to the University.

42. Specifically, CBSCSP withheld $806,689.28 from its payment.

43. Additionally, CBSCSP's calculation of the percentage of gross revenue for the Agreement year ending on June 30, 2017 was approximately $50,000 to $80,000 less than what was due and owing to the University.

44. In total, CBSCSP failed to pay more than $850,000.00 that was due and owing to the University.

## FIRST CAUSE OF ACTION
## (Breach of Contract)

45. The University realleges and incorporates Paragraphs 1 through 44 by this reference.

46. In May 2007, the University entered into a Multi-Media Rights Agreement ("the Agreement") with CBSCSP.

47. Pursuant to the Agreement, the University granted to CBSCSP certain sponsorship, broadcast/distribution, and event marketing rights and privileges associated with the University's athletic programs during the term of the Agreement.

48. In exchange, CBSCSP agreed to pay the University an annual rights fee for each year of the Agreement, as well as a percentage of the gross revenue collected by CBSCSP in administering the University's sponsorship, broadcast/distribution, and event marketing rights and privileges.

49. Upon the expiration or earlier termination of the Agreement, all of the rights granted to CBSCSP terminated and immediately reverted back to and vested with the University.

50. The University was not required to pay CBSCSP an amount equal to 15% of the total value of any authorized broadcasting, sponsorship, and/or advertising agreements CBSCSP entered into with third parties that extended beyond the expiration of the Agreement if the Agreement expired pursuant to its terms on June 30, 2017.

51. The Agreement expired pursuant to its terms on June 30, 2017.

52. The University did not terminate the Agreement.

53. The University performed its obligations under the Agreement.

54. When the Agreement expired pursuant to its terms on June 30, 2017, CBSCSP owed in excess of $1,500,000 to the University as the percentage of gross revenue for the Agreement year ending on June 30, 2017.

55. CBSCSP was required to pay the percentage of gross revenue for the Agreement year ending on June 30, 2017 to the University within sixty (60) calendar days of that date.

56. CBSCSP failed to submit any payment to the University for the percentage of gross revenue for the Agreement year ending on June 30, 2017 within sixty (60) calendar days of June 30, 2017.

57. More than sixty (60) calendar days after June 30, 2017, CBSCSP submitted a partial payment of the percentage of gross revenue for the Agreement year ending on June 30, 2017 that was due and owing to the University.

58. Specifically, CBSCSP withheld $806,689.28 from its payment.

59. Additionally, CBSCSP's calculation of the percentage of gross revenue for the Agreement year ending on June 30, 2017 was approximately $50,000 to $80,000 less than what was actually due and owing to the University.

60. In total, CBSCSP failed to pay more than $850,000.00 that was due and owing to the University.

61. CBSCSP breached the Agreement with the University by failing to submit payment of all amounts due and owing under the Agreement to the University.

62. CBSCSP breached the Agreement with the University by failing to submit timely payment of the full amounts due and owing under the Agreement to the University.

63. Due to CBSCSP's breaches of the Agreement, the University has been forced to retain counsel to address CBSCSP's contractual violations.

64. As a result of CBSCSP's breaches of the Agreement, the University is entitled to damages in the amount due and owing under the Agreement, plus incidental and consequential damages, costs of court, pre- and post-judgment interest, and reasonable attorney fees.

## SECOND CAUSE OF ACTION
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

65. The University realleges and incorporates Paragraphs 1 through 64 by this reference.

66. CBSCSP had an implied obligation to deal with the University fairly and in good faith in performing its duties and obligations under the Agreement.

67. CBSCSP owed an implied duty to the University to refrain from actions that would intentionally destroy or injure the University's right to receive the benefits of the Agreement.

68. CBSCSP breached its implied obligations and duties to the University by requesting and obtaining permission from the University to enter into sponsorship contracts with third parties under the Agreement that extended beyond the expiration (June 30, 2017) of the Agreement, and subsequently withholding $806,689.28 in payments owing to the University under the Agreement on the basis that CBSCSP was entitled to 15% of the total value of the nineteen (19) sponsorship contracts that extended beyond June 30, 2017 once the Agreement expired on its terms.

69. CBSCSP further breached its implied obligations and duties to the University by withholding an additional $50,000 to $80,000 in payments owing to the University under the Agreement.

70.     CBSCSP's conduct has been contrary to clear contractual language and obligations under the Agreement, and with knowledge of those contractual provisions and related obligations.

71.     CBSCSP's conduct was not taken in good faith and/or has breached the covenant of good faith and fair dealing.

72.     CBSCSP's conduct has denied the University its reasonably expected benefits under the Agreement.

73.     CBSCSP's breaches of the implied covenant of good faith and fair dealing have resulted in damages to the University.

74.     As a result of CBSCSP's breaches of the covenant of good faith and fair dealing, the University is entitled to damages in the amount due and owing under the Agreement, plus incidental and consequential damages, costs of court, pre- and post-judgment interest, and reasonable attorney fees.

## THIRD CAUSE OF ACTION
**(Declaratory Relief)**

75.     The University realleges and incorporates Paragraphs 1 through 74 by this reference.

76.     The University requests that the Court enter a declaration that, because the Agreement expired on its terms on June 30, 2017 and was not terminated by the University, the University is not and was not liable to CBSCSP for 15% of the total value of the nineteen (19) sponsorship contracts that extended beyond June 30, 2017, including the $806,689.28 that CBSCSP withheld from its payment to the University for the percentage of gross revenue for the Agreement year ending on June 30, 2017.

## FOURTH CAUSE OF ACTION
### (Unjust Enrichment)

77. The University realleges and incorporates Paragraphs 1 through 76 by this reference.

78. The University was not required to pay CBSCSP an amount equal to 15% of the total value of any authorized broadcasting, sponsorship, and/or advertising agreements CBSCSP entered into with third parties that extended beyond the expiration of the Agreement if the Agreement expired pursuant to its terms on June 30, 2017.

79. In January 2015, CBSCSP requested permission from the University to enter into sponsorship contracts with third parties under the Agreement that extended beyond the expiration (June 30, 2017) of the Agreement.

80. The University ultimately agreed to allow CBSCSP to enter into nineteen (19) sponsorship contracts that extended beyond June 30, 2017.

81. CBSCSP received compensation, benefits, and/or payments, directly or indirectly, from the nineteen (19) sponsorship contracts that extended beyond June 30, 2017 prior to June 30, 2017.

82. The Agreement expired pursuant to its terms on June 30, 2017.

83. The University did not terminate the Agreement.

84. When the Agreement expired pursuant to its terms on June 30, 2017, CBSCSP owed in excess of $1,500,000 to the University as the percentage of gross revenue for the Agreement year ending on June 30, 2017.

85. CBSCSP was required to pay the percentage of gross revenue for the Agreement year ending on June 30, 2017 to the University within sixty (60) calendar days of that date.

86. CBSCSP failed to submit any payment to the University for the percentage of gross revenue for the Agreement year ending on June 30, 2017 within sixty (60) calendar days of June 30, 2017.

87. CBSCSP refused to pay the full amount of the percentage of gross revenue for the Agreement year ending on June 30, 2017 that was past due and owing to the University.

88. Specifically, CBSCSP withheld $806,689.28 from its payment.

89. Additionally, CBSCSP's calculation of the percentage of gross revenue for the Agreement year ending on June 30, 2017 was approximately $50,000 to $80,000 less than what was actually due and owing to the University.

90. The $806,689.28 CBSCSP withheld from its payment to the University for the percentage of gross revenue for the Agreement year ending on June 30, 2017 included a sum equal to 15% of unpaid amounts that were not yet due and owing under the nineteen (19) sponsorship contracts, and that would not become due and owing under the nineteen (19) sponsorship contracts until one to five years later.

91. As a result of CBSCSP's breaches of the Agreement and/or the covenant of good faith and fair dealing, it was unjustly enriched and the University is entitled to damages in the amount due and owing under the Agreement, plus incidental and consequential damages, costs of court, pre- and post-judgment interest, and reasonable attorney fees.

## **PRAYER FOR RELIEF**

WHEREFORE, the University demands judgment against CBSCSP as follows:

1. For damages in an amount not less than $886,689.28 ($806,689.28 + $80,000.00);

2. Incidental and consequential damages;

3. Costs and other expenses pursuant to contract, statute, and law;

4. Pre- and post-judgment interest;

5. Reasonable attorney fees;

6. Declaratory relief; and

7. For such other and further relief as the Court deems just.

## JURY DEMAND

The University demands a jury trial on all issues triable by a jury and has paid the statutory fee.

DATED this 27th day of February, 2018.

SNOW CHRISTENSEN & MARTINEAU

*/s/ Maralyn M. English*
Maralyn M. English
Nathan R. Skeen
*Attorneys for Plaintiff University of Utah*

4823-9376-0094, v. 1